327 So.2d 762

**Mavis Ballard CHAVERS**

v.

**STATE.**

**3 Div. 408.**

Court of Criminal Appeals of Alabama.

Feb. 17, 1976.

William J. Baxley, Atty. Gen., and Milton C. Davis, Asst. Atty. Gen., for the State.

P. Richard Hartley, Greenville, for appellant.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of murder in the first degree and a sentence to life imprisonment in the penitentiary.

The victim and her sister-in-law went to the home of their sister-in-law, the appellant, in Greenville around 4:00 or 4:30 P.M. October 27, 1974. The transcript of the testimony shows without dispute that the victim was killed by shot from a shell in a shotgun fired by defendant. The only eyewitnesses to the killing who testified were the visiting companion of the victim and the defendant. The only other persons at the house at the time were some children related to the victim's companion, who were brought by her to defendant's home.

The companion of the victim was a witness for the State. She testified that a quarrel between defendant and the victim ensued soon after she arrived at defendant's house. Before the quarrel subsided, the victim went out of the house, through the front door, to get something out of her car, and as she returned to the front door of defendant's house she was met by defendant who was holding a shotgun. According to the witness, defendant told deceased, "Don't come back in this house. We are through with each other. We have said all we are going to say."; that the victim then stepped up on a step of the porch and defendant said, "Don't come back in here anymore."; that deceased stepped up on the porch and the defendant then fired the shotgun through the closed screen door, knocking the deceased into the yard, where she soon died. The witness also said that there had been a quarrel the day before between the deceased and defendant, which took place in the presence of the witness.

In her testimony, defendant said that during the quarrel between her and deceased, deceased slapped her "up side of the head" scaring her, and that when the deceased attempted to come back into her house, after being warned not to do so, defendant shot her through the screen door.

The two witnesses mentioned testified as to other details, and there were additional witnesses who testified, but none of them had any knowledge of what took place other than what they learned after the homicide.

Defendant had pleaded not guilty and not guilty by reason of insanity. She relied upon her claim of self defense to support her plea of not guilty.

The sufficiency of the evidence to support the verdict is not questioned on appeal, and our review of the testimony convinces us that a jury question was presented as to defendant's guilt of murder in the first degree.

Appellant bases her insistence upon a reversal upon three particular rulings of the trial court: (1) denial of defendant's motion to exclude a statement of a State's witness as to the pregnancy of the victim, (2) the admission in evidence over the objection of defendant of photographs of the front door of defendant's residence and (3) overruling defendant's objection to the use by State's attorney, while he was cross-examining defendant, of a purported statement by her as to the killing.

As to the reference to the pregnancy of the victim, the record shows that while Kathy Sexton, the State's only eyewitness to the killing, was being cross-examined as to the size of the victim the following occurred:

"Q. So, she was about my height?

"A. Yes.

"Q. And, weighed more than I do?

"Yes.

 "She was bigger than I am, not because she was six months pregnant, though.

"BY MR. HARTLEY: I move that that statement be excluded, and I ask that the Judge caution the Jury, and instruct them as to the content of that statement.

"BY THE COURT: Motion denied.

By Mr. Hartley:

"Q. How big was she, normally?

"BY MR. ANDREWS: Object to the word normally, Your Honor.

"BY THE COURT: Overruled.

"By Mr. Hartley:

"Q. Alright, go ahead?

"A. I couldn't tell you.

"Q. Normally, is she bigger than I am?

"A. I'd say a little."

Appellant argues that "knowledge that the deceased was pregnant when struck in the abdomen with a shotgun blast had a significant effect on the jurors. This information almost certainly tended to inflame the jurors, to appeal to their emotions instead of reason and generally to prejudice the defendant. Most certainly the information was of no probative value and did not prove or disprove issues in controversy."

We doubt not that there is basis for the contention that such evidence had a tendency to arouse the emotions of jurors, but this alone does not make the testimony inadmissible. The contention that the evidence was "of no probative value and did not prove or disprove issues in controversy" is not supported by any authorities cited. On the contrary, it has been uniformly held that in a homicide case in which self-defense is relied upon by defendant, the physical condition of the victim is admissible in evidence. *Nixon v. State*, 261 Ala. 74, 72 So.2d 846, *Smith v. State*, 209 Ala. 666, 96 So. 779.

The photographs to which objection was made and overruled depicted a clear view of the front door of defendant's house, almost to the full length of the door, including the sides of the doorframe and a short distance beyond. They show the closed screen door with the hole in the screen caused by the blast from the shotgun and the closed inner wooden front door of defendant's house. The pictures were taken the day after the homicide.

Appellant presents an interesting question by his argument that the "photographs undermine the defendant's entire effort to show that it was quite possible to see into the house where defendant stood and almost certainly prejudiced defendant's case of self-defense in the minds of the jury." This contention was not as clearly presented to the trial court in defendant's objection to the photographs, although defendant did insist that the photographs did not depict the scene as it was at the time of the homicide.

As we understand appellant's position, a photograph of the door and the doorway of her house would not have been admissible unless taken at the same time of day, on the same kind of day, while the wooden door was open, so that it could be determined therefrom what view, if any, and if any to what extent, the victim would have had of defendant as she was approaching or standing inside the door with her shotgun in her hands. We doubt that such perfection in photography can be usually expected or required. We do not think the jury was misled by the photographs. If anything, they tend, we think, to lead them toward the defendant as to her contention and not toward the State. A clear view of the closed door is shown. There is no contention that the photographs were introduced for the purpose of showing the view of something beyond the screen in the house. They were pertinent and admissible evidence in the State's case in chief in showing where defendant shot while the screen door was closed. The distance of

the hole from the floor had a bearing upon the position of the gun when fired by defendant. The trial court was not in error in admitting the photographs, and we do not believe that defendant was prejudiced in any way by the fact that the wooden door was closed when the photographs were taken.

■ During a part of the cross-examination of defendant, counsel for the State held in his hand a document purporting to be a transcript of statements made by defendant upon her arrest after the homicide. Although ample proof was made of all requirements for the admission of a confession, the court sustained defendant's objection to the offer in evidence of the transcript on the ground that no evidence had been presented showing that it was an accurate reproduction of the tape. Appellant's insistence has been resolved against her under circumstances almost identical with those considered. In *Parker v. State*, 266 Ala. 63, 94 So.2d 209, the solicitor used what appeared to be a written transcription of the defendant's oral statement for the purpose of cross-examining defendant. Appellant's argument therein "that it was reversible error for the court to permit the solicitor to cross-examine the defendant" from the paper was rejected. In following *Parker,* it was held in *Caldwell v. State,* 282 Ala. 713, 213 So.2d 919:

> "In *Parker v. State*, 266 Ala. 63, 94 So.2d 209, a situation almost identical to that presented in the present case was considered. This court wrote:
>
> " 'The solicitor merely used the paper to refresh his own memory when propounding questions to the defendant on cross-examination. In other words, the character of the paper was nothing more than private notes of the solicitor.'

> "No error resulted in the procedure so complained of by the appellant in this instance."

It is not to be said, we think, that there cannot be circumstances constituting an abuse of the privilege of counsel to use such a statement while cross-examining a witness, such as where the purpose or effect is not to aid counsel in the performance of his duties but to lead the jury to a belief in the existence of facts that should come to them by admissible evidence only. In overruling defendant's objection, the trial court obviously relied upon such cases as *Parker, supra* and *Caldwell, supra,* which it should have done. We do not have before us a pictorial view of the action of State's counsel. The record does not reflect the extent of the use by State's counsel of the transcription. All of this was in open view of the trial judge and properly controllable by him within the exercise of his discretion. We can see no abuse thereof, and we think it should be stated that there is no contention that there is any such abuse.

In addition to our consideration of the alleged errors urged by appellant, we have examined the record for any error prejudicial to defendant and have found none and conclude that the judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.